# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

| | |
|---|---|
| Manda Roberson and Alfonzo Roberson, individually and on behalf of the Heirs at Law of A.A.R., a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>The Dakota Boys & Girls Ranch; Shauna Faye Holweger, in her individual capacity as a Ranch staff member; Ebony James, in her individual capacity as a Ranch staff member; and John Does 1-2, acting in their individual capacities as supervisors at the Ranch,<br><br>Defendants. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 3:21-cv-3 |

Before the Court is the Defendants' Dakota Boys & Girls Ranch (the "Ranch"), Shauna Faye Holweger ("Holweger"), Ebony James ("James"), and John Does 1-2 (collectively, the "Defendants") motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 11. The Plaintiffs, Manda and Alfonzo Roberson (together, the "Robersons"), responded in opposition to the motion on February 22, 2021. Doc. No. 13. The Defendants filed a reply on March 9, 2021. Doc. No. 16.

This case centers on the suicide of the Robersons' twelve-year-old daughter, A.A.R., while at the Ranch. Invoking 42 U.S.C. § 1983, the Robersons' complaint alleges that the Ranch, Holweger, and James violated A.A.R.'s civil rights under deliberate indifference and failure to train theories.[1] While the instant motion to dismiss was pending, the Eighth Circuit Court of

---

[1] The Robersons voluntarily dismissed a supervisory liability claim against John Does 1-2 without prejudice. Doc. No. 13, p. 10 n.7.

Appeals decided <u>Jane Doe v. North Homes, Inc.</u>, 11 F.4th 633 (8th Cir. 2021), which involved a § 1983 claim in a Federal Rule of Civil Procedure 12(b)(6) posture. The Robersons provided the Court with the <u>Doe</u> opinion the same day it was decided. Doc. No. 18. Considering <u>Doe</u>, the Court ordered supplemental briefing (Doc. No. 19), and both parties filed timely supplemental briefs addressing the applicability of <u>Doe</u> to this motion to dismiss. Doc. Nos. 23, 24. The Court held a hearing on the motion on October 4, 2021. Doc. No. 25.

For the reasons below, the motion is granted.

**I.     BACKGROUND**

At the motion to dismiss stage, the Court accepts the complaint's factual allegations as true. <u>See</u> Doc. No. 1. The Robersons are A.A.R.'s parents. <u>Id.</u> ¶ 5. The Ranch is a nonprofit corporation that operates a licensed psychiatric residential treatment facility[2] ("PRTF") in Fargo, North Dakota. <u>Id.</u>  ¶ 8. According to the Robersons:

> 11.    The Ranch is accredited through the Commission on Accreditation of Rehabilitation Facilities and is licensed by the State of North Dakota. As such, the Ranch is endowed by the State of North Dakota with powers or functions that are governmental in nature and is subject to constitutional limitations. <u>See</u> <u>Gorenc v. Salt River Project Agric. Imp. & Power Dist.</u>, 869 F.2d 503 (9th Cir. 1989); <u>Kirtley v. Rainey</u>, 326 F.3d 1088 (9th Cir. [sic] 2003); <u>Kennedy v. Youth Servs. Int'l</u>, No. 18-cv-75 (PJS/BRT), Hr'g Tr. at 3 (D. Minn. May 16, 2018).

<u>Id.</u> ¶ 11. Holweger worked as a supervisor at the Ranch. <u>Id.</u> ¶ 12. James worked as a staff member. <u>Id.</u> ¶ 13.

Without question, A.A.R. suffered from a myriad of mental health conditions. <u>Id.</u> ¶ 6. She also struggled with delayed psychological development and substance abuse issues. <u>Id.</u>  After

---

[2] A PRTF is "a facility that provides to children and adolescents a total, twenty-four-hour, therapeutic environment integrating group living, educational services, and a clinical program based upon a comprehensive, interdisciplinary clinical assessment and an individualized treatment plan that meets the needs of the child and family." N.D. Cent. Code § 25-03.2-01(7).

numerous legal issues and several psychiatric hospitalizations, A.A.R. became a ward of the State of North Dakota in May 2018.  Id. ¶ 15.  She was then placed at Youth Correctional Center ("YCC") in Mandan, North Dakota in May of 2018.  Id. ¶ 16.  On August 2, 2018, while at YCC, A.A.R. attempted suicide.  Id. ¶ 17.

As alleged by the Robersons, after the suicide attempt, A.A.R. was admitted to the Ranch for PRTF level care on August 20, 2018.  Id. ¶ 18.  When admitted, she was taking prescription medications for depression, anxiety, and mood stabilization.  Id. ¶ 19.  Dr. Wayne Martinsen, a psychiatrist, conducted A.A.R's initial evaluation.  Id. ¶ 21.  Martinsen also documented A.A.R.'s extensive history with mental illness and proclivity for self-harm.  Id.  Over the course of late-August and September, A.A.R. continued to be evaluated and treated at the Ranch.  Id. ¶¶ 21-118.  However, on October 2, 2018, A.A.R. committed suicide while at the Ranch by hanging herself from a bathroom door.  Id. ¶¶ 119, 131.

The Robersons filed their complaint on January 7, 2021.  See Doc. No. 1.  As relevant here, the complaint advances two claims under 42 U.S.C. § 1983.  The first accuses Holweger and James of violating A.A.R.'s Eighth and Fourteenth Amendment rights through deliberate indifference to her risk of suicide.  Id. ¶¶ 146-54.  The second charges the Ranch with failing to properly train its employees to protect suicidal residents from harm.  Id. ¶¶ 164-67.  The Defendants move to dismiss the complaint in its entirety, primarily arguing the complaint fails to plead sufficient factual allegations that the Defendants were acting under color of state law while providing A.A.R. with PRTF level treatment.  Doc. No. 11.

## II.  DISCUSSION

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure

3

requires dismissal if a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff must plead facts that show more than mere speculation or possibility that a defendant acted unlawfully. Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 371 (8th Cir. 2017) (citing Iqbal, 556 U.S. at 678).

While obligated to accept a complaint's factual allegations as true, courts are not required to accept a plaintiff's legal conclusions or a "formulaic recitation of the elements of a cause of action." In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (quoting Iqbal, 556 U.S. at 678). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. Whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Alleruzo v. SuperValu, Inc. (In re SuperValu, Inc.), 925 F.3d 955, 962 (8th Cir. 2019) (citation omitted).

When considering a motion to dismiss under Rule 12(b)(6), courts generally must ignore materials outside the pleadings. In their discretion, courts may consider "some materials that are part of the public record or do not contradict the complaint," as well as materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). "Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Ashanti v.

4

City of Golden Valley, 666 F.3d 1148, 1150-51 (8th Cir. 2012) (citation and internal quotation marks omitted).

To state plausible 42 U.S.C. § 1983 claims, the Robersons must plead sufficient facts to alleged that the Defendants (1) acted under color of state law, and (2) violated rights guaranteed by the Constitution or federal statute. Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016) (citation omitted).

**A.      State Actor and Color of State Law Element**

Turning substantively to the motion to dismiss, the Defendants assert the complaint fails to plead sufficient (or any) facts to establish the first element of a § 1983 claim – namely, that the Defendants were state actors and were acting under the color of state law. The Robersons posit their complaint sufficiently alleges the Defendants were acting under the color of state law because the Ranch incarcerated A.A.R. and the Ranch exercised the carceral and penological power of the State of North Dakota. However, the Robersons' complaint does not plead factual allegations to support their position.

As recently summarized by the Eighth Circuit Court of Appeals in Doe:

> Only a state actor can face § 1983 liability. See Youngblood v. Hy-Vee Food Stores, 266 F.3d 851, 855 (8th Cir. 2001). But "in a few limited circumstances," a private entity "can qualify as a state actor," including "when the private entity performs a traditional, exclusive public function," and "when the government acts jointly with the private entity." Halleck v. Manhattan Cmty. Access Corp., —— U.S. ——, 139 S. Ct. 1921, 1928, 204 L. Ed. 2d 405 (2019) (internal citations omitted).

*\*\*\**

> "Our ultimate conclusion must turn on the particular facts of the case, since only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007) (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 722, 81 S.Ct. 856, 6 L. Ed. 2d 45 (1961) (cleaned up)).

5

Doe, 11 F.4th at 637.  Here, as in Doe, the Court must decide if the Robersons alleged sufficient facts to plausibly plead that the Defendants acted under the color of state law.

As a starting point for determining state actor plausibility, Doe is instructive.  In Doe, the Eighth Circuit Court of Appeals reversed the district court's decision to grant North Homes' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In so reversing, the Eighth Circuit "sifted" through the factual allegations of Doe's complaint and noted:

> Doe alleged that North Homes cared for juveniles whose liberties the state (counties) decided to restrict.  She also alleged that the state (agencies) agreed to empower North Homes to run two units, through which North Homes could deprive residents of their liberties. And she alleged that the state (legislature, agencies, and courts) gave North Homes the power to detain residents in a correctional facility whenever it wanted and for whatever reason it saw fit.
>
> \*\*\*
>
> [S]he alleged that North Homes moved her to, and detained her in, a corrections unit, where the alleged abuse occurred[.]
>
> \*\*\*
>
> She also alleged that North Homes later detained her in the corrections unit to punish and silence her efforts to report abuse.

Doe, 11 F.4th at 638 (emphasis in original).  Indeed, the underlying complaint in Doe included the following factual allegations against North Homes:

> 12. In operating ITASKIN, North Homes worked in concert with Itasca and other Minnesota counties to provide care for minor children who were detained, incarcerated, committed, or the like, for criminal, mental health, or other protective purposes.
>
> 13. ITASKIN has and had at all times material hereto units that were license by both the Minnesota Department of Human Services ("DHS") and the Minnesota Department of Corrections ("DOC"), though an inter-agency agreement between those entities.

> 14. ITASKIN operated through joint oversight by DHS and DOC under the terms of the inter-agency agreement between DOC and DHS, and ITASKIN maintained both DHS-and-DOC licensed residential units within its facility.
>
> \*\*\*
>
> 16. North Homes maintained discretion under the color of state law, for example through statutory and regulatory and/or court orders, to move its minor residents between the DOC-and DHS licensed units at ITASKIN.

Complaint ¶¶ 12-14, 16, Doe v. N. Homes, Inc., et al., No. 18-cv-3419 (D. Minn. Dec. 18, 2018). The Doe complaint also alleged North Homes "acted under color of state law because it fulfilled the public function of juvenile incarceration, detainment, and commitment, and acted in concert with state actors in denying [Doe] her federal civil rights." Id. ¶ 51.

After reviewing those factual allegations, the Eighth Circuit Court of Appeals decided Doe had alleged sufficient facts to plausibly plead that North Homes was a state actor. Doe, 11 F.4th at 639. Specifically, the Eighth Circuit pointedly focused on Doe's allegations that North Homes detained her in a <u>corrections</u> unit, noting Doe "alleged that North Homes moved her to, and detained her in, a <u>corrections</u> unit, where the alleged abuse occurred." Id. at 638 (emphasis in original). And in the Eighth Circuit's holding, it stated: "[W]e conclude that Doe plausibly alleged that North Homes's exercise of a public function (the state's authority to detain her) caused her involuntary detainment in a <u>corrections</u> unit." Id. at 639 (emphasis in original).

Upon close review, the absence of such factual allegations in the Robersons' complaint stands in stark contrast to the factual allegations contained in the Doe complaint and as emphasized by the Eighth Circuit. Here, the sole allegation in the thirty-page complaint that attempts to allege facts as to the color of state law element is found in paragraph eleven:

> 11. The Ranch is accredited through the Commission on Accreditation of Rehabilitation Facilities and is licensed by the State of North Dakota. As such, the Ranch is endowed by the State of North Dakota with powers or functions that are governmental in nature and is subject to constitutional limitations. See Gorenc v.

7

>Salt River Project Agric. Imp. & Power Dist., 869 F.2d 503 (9th Cir. 1989); Kirtley v. Rainey, 326 F.3d 1088 (9th Cir. [sic] 2003); Kennedy v. Youth Servs. Int'l, No. 18-cv-75 (PJS/BRT), Hr'g Tr. at 3 (D. Minn. May 16, 2018).

Doc. No. 1, ¶ 11. To be sure, a state licensing and extensive regulation alone cannot, and does not, convert a private actor into a state actor for the purposes of a § 1983 claim (see Jackson v. Metro. Edison Co., 419 U.S. 345, 349 (1974)), and the remaining language in paragraph eleven is a legal conclusion that need not be accepted as true for the purposes of deciding a motion to dismiss under Rule 12(b)(6). Iqbal, 556 U.S. at 678.

Unlike the complaint in Doe, where Doe alleged that North Homes detained her in a corrections unit and that it worked in concert with the Minnesota Department of Corrections to detain and incarcerate juveniles, there are no factual allegations in this complaint that the Ranch detained A.A.R. in a corrections unit or that A.A.R. was detained for correctional purposes while at the Ranch. There are no factual allegations that the State of North Dakota agreed to empower the Ranch to run corrections units to deprive individuals of their liberties. There are no factual allegations that the State of North Dakota gave the Ranch the power to detain individuals in a corrections unit or facility whenever it wanted and for whatever reason it saw fit. There are no factual allegations that the Ranch worked in concert with the State of North Dakota to provide care for minor children who were detained, incarcerated, committed, or the like. In fact, quite to the opposite of the allegations in Doe, the Robersons allege A.A.R. was removed from YCC, a corrections facility, to receive PRTF level care and treatment after attempting suicide in that corrections facility. Said another way, the complaint is simply missing the basic, factual state actor allegations that were present in Doe and that the Eighth Circuit took care to emphasize in holding that Doe had plausibly pleaded the state actor element.

To overcome these factual deficiencies, the Robersons curiously look to materials outside of their complaint[3] and rely heavily on (1) a May 2018 court order (Doc. No. 15-6), where A.A.R. was ordered a ward of the State of North Dakota, and (2) case law.  The Robersons first suggest the May 2018 court order supports the proposition that the Ranch was exercising the carceral power of the State of North Dakota.  As a threshold matter, in light of the Robersons' position, it gives the Court great pause that they did not cite or refer to the May 2018 court order in their complaint, nor did they make any factual allegations that the Ranch detained A.A.R. or assumed the care, custody, and control of A.A.R. from the State of North Dakota.  Nevertheless, even when considering the May 2018 court order as embraced by the pleadings, the May 2018 court order does not overcome the complaint's inherent factual deficiencies on the state actor element – the court order only dictates that A.A.R. be placed in the "care, custody, and control of the State Department of Corrections[.]"  Doc. No. 15-6.  It did not order A.A.R. to be placed at the Ranch, which the Robersons' counsel agreed with at the hearing on the motion.  To the contrary, the order directly placed A.A.R. at YCC, the corrections facility from which A.A.R. was removed to receive treatment after attempting suicide.

The Robersons also rely heavily on case law, attempting to analogize their view of the complaint to several cases, including West v. Atkins, 487 U.S. 42 (1988), Lemoine v. New Horizons Ranch & Center, Inc., 990 F. Supp. 498 (N.D. Tex. 1998), C.K. v. Northwestern Human Services, 255 F. Supp. 2d 447 (E.D. Pa. 2003), High Pipe v. Hubbard, Case No. CR 08-4183-RHB,

---

[3] Both parties, in response (Doc. No. 13) and in reply (Doc. No. 16), attach via affidavits of counsel additional documents for the Court's consideration. See Doc. Nos. 15, 17.  As noted above, courts generally must ignore materials outside the pleadings, but they may consider "some materials that are part of the public record or do not contradict the complaint," as well as materials that are "necessarily embraced by the pleadings." Porous Media Corp., 186 F.3d at 1079.  To that end, the Court will consider the May 2018 court order as "necessarily embraced by the pleadings" but finds the remaining documents as materials outside the pleadings.

2010 WL 2266363 (D.S.D. June 4, 2010), and <u>Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc.</u>, 509 F.3d 406 (8th Cir. 2007). Critically, however, each case is distinguishable from the facts contained in the Robersons' complaint.

First, in <u>West</u>, an inmate brought a § 1983 claim against a physician who was under contract with the state to provide medical services. <u>West</u>, 487 U.S. at 44. The United States Supreme Court noted that the State of North Carolina had a constitutional obligation to provide adequate medical care to those whom it had incarcerated. <u>Id.</u> at 54-55. North Carolina, in turn, employed physicians, like West, to fulfill those obligations. <u>Id.</u> at 55. West was authorized by North Carolina to provide medical care and did so "clothed with the authority of state law." <u>Id.</u> The Supreme Court also noted that under state law, "the only medical care West could receive for his injury was that provided by the State." <u>Id.</u> <u>West</u> is procedurally and factually distinguishable for several reasons. Here, there are no factual allegations that A.A.R. was incarcerated by the Ranch; no factual allegations that the Ranch contracted with the State of North Dakota to provide medical care; and, no factual allegations that the only medical care A.A.R. could have received was that provided by the State of North Dakota.

Next, in <u>Lemoine</u>, a twelve-year-old, A.L., was committed to the custody of Texas Child Protective Services ("CPS"), which placed A.L. at New Horizons Ranch and Treatment Center, a residential treatment center specifically licensed by CPS to provide care for children in state custody. <u>Lemoine</u>, 990 F. Supp. at 499-500. A.L. died while in the care of New Horizons. <u>Id.</u> New Horizons was alleged to maintain a contract with CPS to "assume the state's responsibility for the day-to-day care and supervision of children in state custody." <u>Id.</u> Focusing on the "extensive contractual relationship" between CPS and New Horizons, and the systemic delegation of care and responsibility for children by Texas to New Horizons, the <u>Lemoine</u> court concluded,

"The State entrusted the well-being and lives of children on a 24-hour basis to New Horizons. Such a plenary delegation of paramount duties to these children inexorably leads to the conclusion that New Horizon's acts are 'fairly attributable to the state[.]'" Id. at 501.

Again, the factual allegations (or lack thereof) in the Robersons' complaint distinguish it from the allegations present in Lemoine. The Robersons did not plead that the Ranch was licensed by the State of North Dakota's equivalent of Child Protective Services or Department of Corrections; the licensing requirement pleaded in the complaint is a license required by the State of North Dakota's Department of Health to provide treatment as a PRTF. The Robersons also did not plead that the Ranch contracts with the State of North Dakota to assume North Dakota's responsibility for the day-to day care and supervision of children in state custody. Additionally, the Robersons did not plead that the State of North Dakota entrusted the well-being and lives of children on a 24-hour basis to the Ranch. And perhaps most importantly, the Robersons did not plead that the State of North Dakota delegated any carceral or penological powers to the Ranch. Consequently, the Court finds the allegations in Lemoine distinguishable.

Third, in C.K., C.K. was allegedly sexually assaulted at a private facility for juvenile delinquents and brought a § 1983 claim against the facility and various employees. C.K., 225 F. Supp. 2d at 448. The court found the facility and its employees "had custody of C.K., a delinquent child, pursuant to a court order[.]" Id. at 451. In C.K., the court order expressly placed C.K. at the private facility. Id. at 499, 551. The C.K. court analogized to West, noting the facility was performing contract services in a prison setting for the state. Id. at 456. Once again, C.K. is factually distinguishable from the facts alleged in this complaint because A.A.R. was not placed at the Ranch by order of the court, a fact which Robersons' counsel acknowledged at the hearing

on the motion. Rather, the complaint alleged A.A.R. was admitted to the Ranch for PRTF level care after her attempted suicide at a corrections facility.

Fourth, in High Pipe, a juvenile detention facility was found to be acting under the color of state law for the purposes of a § 1983 claim because the facility had contracts with the South Dakota Department of Corrections to provide residential and group care treatment service for youth under the jurisdiction of the State of South Dakota. High Pipe, 2010 WL 2266363, at *2. In reaching that decision, the court noted the facility had "access to these youth offenders by a privilege created by the State through contract." Id. Notably, the complaint in High Pipe alleged that the facility was a "juvenile correctional facility" and that the facility provided "education, counseling and correctional services via a contract with the South Dakota Department of Social Services and the Federal Bureau of Prisons." Complaint ¶ 3, High Pipe v. Hubbard, Case No. CR 08-4183-RHB (D.S.D. Nov. 17, 2008). The complaint also alleged that the South Dakota Department of Corrections placed High Pipe in the "care and custody" of the facility. Id. ¶ 15. Here, focusing on the allegations in the Robersons' complaint, there are no allegations of a contract or agreement of any kind between the State of North Dakota and the Ranch, nor are there any allegations that the Ranch worked in concert with the State of North Dakota to provide correctional services for incarcerated youth.

Finally, in Americans United, two non-profit religious organizations running faith-based rehabilitation and treatment programs in an Iowa prison were accused of violating the Establishment Clause. Ams. United, 509 F.3d at 413-19, 422. The Eighth Circuit Court of Appeals logically concluded the entities were state actors because the entities acted jointly with the State of Iowa to operate and provide a residential inmate program in the prison and the state "effectively gave [them] its 24-hour power to incarcerate, treat, and discipline inmates." Id. at 423. No such

similar factual allegations exist in the Robersons' complaint. They do not offer or plead any facts that the State of North Dakota delegated, and the Defendants assumed, the 24-hour power to incarcerate and discipline juvenile inmates, nor do they plead any facts to support the proposition that the Defendants were a willful participant in joint activity with the State of North Dakota. Finally, the complaint does not plead any facts that the Ranch functioned as a residential inmate program for juveniles, or that the Ranch ran a treatment program inside a corrections facility.

Beyond West, Lemoine, C.K., High Pipe, and Americans United, the Court finds Doe and Howell v. Father Maloney's Boys' Haven, Inc., 976 F.3d 750 (6th Cir. 2020) particularly instructive and helpful for determining what factual allegations are sufficient to plausibly plead the color of state law element in § 1983 claims. While not binding authority, in Howell, the Sixth Circuit Court of Appeals affirmed a district court's ruling on a Rule 12(b)(6) motion that a residential institution that provided treatment to at-risk youth was not plausibly alleged to be a state actor under § 1983. Id. at 751. Noting the public function test is "not a minor hurdle," the Sixth Circuit explained that the residential institution had no power to remove children or place them in juvenile correctional facilities – "the kind of things state actors traditionally do." Id. at 752-53. The Sixth Circuit also went further and concluded, "A contract for services between Haven and the [State], together with a state license to operate the home, does not a state actor create." Id. at 754 (citing Manhattan Cmty. Access Corp. v. Halleck, 139 S.Ct. 1931 (2019); Simescu v. Emmet Cnty. Dep't of Soc. Servs., 942 F.2d 372, 375 (6th Cir. 1991)).

In reading Doe and Howell together, as well as Lemoine, C.K., and High Pipe, the Court is left with a spectrum of cases to evaluate what facts are generally sufficient to plausibly allege the state actor element. On the one end, the Eighth Circuit's decision in Doe, along with Lemoine, C.K., and High Pipe, collectively conclude that facts alleging extensive contractual relationships

between a private entity and a state corrections department, in addition to facts alleging that a private entity detained an individual in a corrections unit, are likely enough to plausibly plead the state actor element for a § 1983 claim. On the other end of the spectrum, however, is Howell, which concludes that facts alleging a licensing requirement and a contract are not enough to plausibly allege state actor liability against a private entity. Here, the Robersons' complaint falls towards, and even below, Howell. The complaint fails to advance any factual allegations like those found in Doe, Lemoine, C.K., and High Pipe. On its face, the complaint only pleads a licensing requirement – the Robersons did not allege that any contract or agreement existed between the Ranch and the State of North Dakota, and as discussed at length above, they did not allege any facts that A.A.R. was detained or held in a corrections unit at the Ranch, or facts that the State of North Dakota delegated its care, custody, and control of A.A.R. to the Ranch. Notably, at the hearing on the motion, counsel for the Robersons acknowledged these predicate facts are expressly missing from the complaint but argued the Court should infer that there must be a contract between the Ranch and the State of North Dakota. The Robersons encouraged the Court to make reasonable inferences and allow them to proceed to discovery to obtain that information. The trouble with that position is the Court can only make reasonable inferences based on facts actually alleged in a complaint. The Court must not make inferences based on absent factual allegations as to an essential element of a § 1983 claim to allow a case to proceed to discovery.

Moreover, while not a part of the Court's decision and analysis under Federal Rule of Civil Procedure 12(b)(6), the Court shares the Sixth Circuit's concerns with permitting § 1983 claims against entities like the Ranch, particularly given the dearth of factual allegations on the state actor element in the complaint. As well-stated in Howell:

> Permitting § 1983 claims against entities like the Haven might also do more harm than good. It could cause some benevolent entities, otherwise inclined to offer a

14

charitable service for the State, to "abandon their plans." See <u>Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.</u>, 597 F.3d 163, 182 (4th Cir. 2010) (Wilkinson, J., concurring); <u>see also</u> <u>Filarsky</u>, 566 U.S. at 391, 132 S.Ct. 1657. And it could cause complications for private entities that provide secular services in the name of faith-based missions—not as easy a thing to do if the entity becomes a state actor for federal constitutional purposes. See <u>Teen Ranch, Inc. v. Udow</u>, 479 F.3d 403, 406 (6th Cir. 2007).

<u>Howell</u>, 976 F.3d at 754.

In sum, and as in <u>Doe</u>, the Court must determine whether the Robersons have alleged sufficient facts to plausibly plead their § 1983 claims. Put simply, and after applying and comparing the factual allegations in <u>Doe</u> to the factual allegations in the Robersons' complaint, the complaint does not contain sufficient factual allegations to plausibly plead that the Defendants were state actors that acted under the color of state law. As a result, the complaint fails to plausibly state its § 1983 claims against the Defendants, and the Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted.

### III.     CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, the Defendants' motion to dismiss (Doc. No. 11) is **GRANTED**, and the Robersons' complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Let judgment be entered accordingly.

Dated this 18th day of October, 2021.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court
